COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Hodges
Argued at Salem, Virginia


DEPARTMENT OF MENTAL HEALTH,
 MENTAL RETARDATION AND
 SUBSTANCE ABUSE SERVICES,                    OPINION BY
 WESTERN STATE HOSPITAL              JUDGE WILLIAM H. HODGES
                                         APRIL 22, 2003
v.   Record No. 2553-02-3

WALTER H. HORNER


               FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
                      Humes J. Franklin, Jr., Judge

               Anthony P. Meredith, Assistant Attorney
               General (Jerry W. Kilgore, Attorney General;
               Elizabeth McClanahan, Chief Deputy Attorney
               General; Judith W. Jagdmann, Deputy Attorney
               General; Guy W. Horsley, Jr., Senior
               Assistant Attorney General; Ondray T. Harris,
               Assistant Attorney General, on briefs), for
               appellant.

               Tate C. Love (Black, Noland & Read, P.L.C.,
               on brief), for appellee.


     The Department of Mental Health, Mental Retardation and

Substance Abuse Services, Western State Hospital (DMH) appeals the

decisions of the circuit court denying its motion to dismiss

Walter H. Horner's (Horner) grievance hearing appeal and

reinstating him to his former position.  DMH argues (1) Horner

failed to perfect his appeal to the circuit court, (2) the circuit

court misinterpreted Code § 2.2-3003(D),[1] (3) the circuit court misapplied Code § 2.2-3004(D), (4) the court erred by finding the Department of Employment Dispute Resolution (EDR) compliance rulings were appealable, (5) the court erred by finding appellate review was not precluded, (6) the court's decision renders DMH management powerless to discipline its employees, (7) the court erred by finding the first level respondent provided a remedy, and (8) the court improperly allowed Horner to address and introduce new materials into evidence in violation of its pre-hearing order.

Horner contends DMH failed to abide by the requirements of the state grievance procedure and that an e-mail he transmitted to the Inspector General did not violate Policies 6.05 and 6.10 concerning patient confidentiality.

We agree that the circuit court erred by finding DMH was bound by the determination of the first level respondent. Therefore, we reverse the circuit court's decision and remand for the court to address Horner's other bases for challenging the decisions of the hearing officer.

Background

Horner was an internist at DMH's Western State Hospital. Horner's conduct was governed by the Department of Human

---

[1] Formerly Code § 2.1-116.05(E).  Effective in 2001, former Code § 2.1-1 et seq. was recodified as Code § 2.2-100 et seq.

Resource Management's (DHRM's) Standards of Conduct, DHRM Policies 6.05 and 6.10, DMH's Departmental Instruction 201, and the Grievance Procedure Manual. On May 15, 2001, pursuant to the Standards of Conduct, Horner was issued three Group II written notices and terminated for failure to follow a supervisor's instructions and for failure to comply with Policies 6.05 and 6.10. Dismissal is warranted on the accumulation of two such notices. Horner contested the notices under the statutory grievance procedure. The grievances were qualified for a hearing, pursuant to the Commonwealth's three-step grievance qualification process. See Code § 2.2-3004(D).

At the first level of management review, Horner's immediate supervisor, Dr. Michael T. Clayton, stated he supported the reversal of the notices and he concluded Horner should be reinstated with back pay and benefits. However, in the subsequent two levels of management review, management disagreed with Clayton's decisions.

The matters then went before an EDR hearing officer, as the next level of review. Following a two-day evidentiary hearing, the hearing officer, in an August 20, 2001 written decision, affirmed Horner's termination and two of the Group II notices. Horner sought and obtained reconsideration by the hearing officer, but the hearing officer affirmed his original decision.

-

Horner appealed both decisions to EDR and DHRM.  Horner then appealed to the circuit court.

The court agreed with Horner's contention that the statutory grievance procedure requires that DMH give effect to Clayton's decisions and ordered Horner be reinstated.

## Analysis

In administratively implementing the statutory grievance procedure, pursuant to Code § 2.2-3003(A),[2] EDR produced the "Grievance Procedure Manual" (GPM).  In the GPM, EDR provided for three levels of management review for the purpose of resolving an employee's grievance short of elevating the matter to a formal hearing.  GPM § 2.1 and §§ 3.1 through 3.3.  Under the GPM procedure, the first of three potential "Management Resolution Steps" is conducted by the "First-Step Respondent." GPM § 3.1.  The "First-Step Respondent" is the employee's immediate supervisor.  GPM § 9.  The subsequent two steps are conducted by an individual in a senior management position and the agency head, respectively.  GPM §§ 3.2, 3.3, and 9.

---

[2] Code § 2.2-3000(A) provides:  "As part of the Commonwealth's program of employee relations management, the Department of Employment Dispute Resolution shall develop a grievance procedure that includes not more than three successively higher grievance resolution steps and a formal hearing as provided in this chapter."

Code § 2.2-3003(D) provides, in pertinent part, that "management shall review the grievance and respond to the merits thereof.  Each level of management review shall have the authority to provide the employee with a remedy."  The circuit court found that Clayton, the first level respondent, provided Horner with a remedy and that, therefore, DMH was precluded from pursuing the matter to the next levels of management review.

Such an interpretation of the statute and the manual would essentially allow an immediate, lower-level supervisor to make a final, conclusive determination and would provide the lower-level supervisor with more authority on disciplinary matters than an agency director.

The stated policy of the State Grievance Procedure is to "afford an immediate and <u>fair</u> method for the resolution of employment disputes . . . ."  Code § 2.2-3000 (emphasis added). A system which provides such disparate remedies and which allows only the employee to proceed to subsequent resolution steps would hardly be "fair."  More importantly, such an interpretation of the statute and the procedure is absurd and irrational.

The Supreme Court of Virginia has consistently held that statutes "must be given a rational interpretation consistent with [their] purposes, and not one which will substantially defeat [their] objectives."  <u>City of Chesapeake v. Gardner</u>

-

Enterprises, 253 Va. 243, 247, 482 S.E.2d 812, 815 (1997) (citing Mayor v. Industrial Dev. Auth., 221 Va. 865, 869, 275 S.E.2d 888, 890 (1981)).  Furthermore, "[a] provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the Legislature apparent from the other sections and provisions thereof, but the words are to be expanded or qualified to effectuate the intention."  Tabb v. Commonwealth, 98 Va. 47, 56-57, 34 S.E. 946, 949 (1900).  Allowing the lower-level first respondent more authority than the agency head in determining the proper disciplinary actions for employees clearly contravenes the stated and apparent intention of the grievance procedure.  See Code § 2.2-3000 et. seq.  Therefore, we reverse the circuit court's decision.  We remand the case for the circuit court to determine the merits of Horner's additional claims which it initially refused to address.

Reversed and remanded.

-