COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
            Haley, Petty, Beales and Millette
 Argued at Richmond, Virginia


JOHN DOE, D.D.S.
                                                                OPINION BY
v.      Record No. 2780-06-1                            JUDGE ROBERT J. HUMPHREYS
                                                                JUNE 17, 2008
VIRGINIA BOARD OF DENTISTRY


                            UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                         COUNTY OF JAMES CITY
                        Walter J. Ford, Judge Designate


                James J. Knicely (Knicely & Associates, P.C., on briefs), for
                appellant.

                Howard M. Casway, Senior Assistant Attorney General (Robert F.
                McDonnell, Attorney General; David E. Johnson, Deputy Attorney
                General; Jane D. Hickey, Senior Assistant Attorney General, on
                brief), for appellee.


        A pseudonymous John Doe, D.D.S.,[1] ("Doe") appeals a decision of the Circuit Court of

the City of Williamsburg and County of James City affirming a decision of the Virginia Board of

Dentistry ("the Board").  Specifically, Doe argues that:  (1) the Board unlawfully imposed a

monetary penalty upon him during an ongoing civil action regarding the same subject matter;

(2) the Board imposed sanctions upon him, including a reprimand, that are not authorized by

statute; (3) the Board's informal conference committee erred by failing to postpone its

_____

        [1] The Circuit Court of the City of Williamsburg and County of James City ordered the
original record of this matter placed under seal, and substituted the pseudonym "John Doe," for the
appellant's real name under the general confidentiality provisions of Code § 54.1-2400.2.  The
circuit court also assigned pseudonyms to Doe's patients to further protect confidentiality.

deliberations to allow the participating citizen member to join deliberations, and by allowing the adjudication specialist to remain in closed session with the committee; (4) the Board violated Doe's due process rights under the United States and Virginia Constitutions in an overly broad application of its recordkeeping regulations; and (5) the Board's finding that Doe had violated its recordkeeping requirements was not supported by credible evidence.

By opinion dated November 20, 2007, a panel of this Court affirmed the judgment of the trial court. We stayed the mandate of that decision and granted appellant's petition for rehearing *en banc*. Upon rehearing *en banc*, it is ordered that the stay of this Court's November 20, 2007 mandate is lifted and the judgment of the circuit court is affirmed for the following reasons.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the Board, the party prevailing below. Hilliards v. Jackson, 28 Va. App. 475, 479, 506 S.E.2d 547, 549 (1998). So viewed, the evidence established the following.

On April 1, 2003, a Virginia newspaper published an article detailing a civil malpractice suit initiated against Doe by his former patient ("Patient A"). The suit alleged that Doe did not sufficiently anesthetize Patient A prior to extracting her teeth, left broken root fragments in her mouth, and broke her nose during the extraction process. Following the publication of the article, the Board launched an investigation into the incident.

As the investigation progressed, the Board began to focus its attention on Doe's recordkeeping. As a result, Debbie Wintermantel ("Wintermantel"), an investigator for the Virginia Department of Health Professions assigned to Doe's case, inspected the dental files of numerous patients and former patients of Doe. Doe's records for Patient A consisted of Doe's notations that the patient had "severe multiple carious [sic] lesions and periodontal disease" and

that "[a]fter discussion of options, [Patient A] decided on extractions and full upper and lower dentures." The records did not indicate which teeth Doe extracted from Patient A.

Doe's records for Patient B indicated a diagnosis of "severe decay," and stated that "after discussing options [with the patient], [Patient B] [illegible] chose complete dentures." The records again did not indicate which teeth Doe extracted.

Doe's records for Patients D, F, and G read: "cancer exam, negative," but indicated no ascertainable diagnosis.

Doe's records for Patient E indicated a diagnosis of "severe periodontal disease," and stated that "after discuss[ing] [] options, [Patient E] decided on extraction of remaining teeth and placement of full upper and lower dentures." The patient records did not indicate which teeth Doe extracted.

Doe's records for Patients F and G also included copies of a "Dental Prosthetic Work Authorization," a form used by dentists to order dentures or denture materials from dental laboratories. Handwritten across the top of the work authorization for Patient F was the word "Universal." Under the heading "Description of Work," Doe had written only the words "partial frame." Doe's name and address were printed at the bottom of the form, but his signature appeared nowhere on the form. Printed across the top of the work authorization for Patient G were the words "Universal Dental Laboratories, Inc." with an address printed directly below. Doe had written "U [and] L partial dentures" under the heading "Description of Work." Doe's signature was also present at the bottom of the form.[2]

On December 8, 2004, the Board sent Doe a letter notifying him that a Special Conference Committee of the Board ("the Committee") would hold an informal hearing to

---

[2] According to Doe, he does not rely on dental laboratories to build dentures for his patients. Instead, he orders bare metal framework from the laboratories, and builds the dentures himself.

- 3 -

review allegations that Doe negligently treated Patient A, and failed to keep proper dental records for six of his patients.[3]

Doe appeared before the Committee, composed of two dentists and one citizen member, on May 20, 2005. At the conclusion of the evidentiary portion of the hearing, in which the Commonwealth presented Doe's patient records in question, the citizen member had to leave, and was unable to participate in the deliberations of the Committee. Over Doe's objection, the remaining members of the Committee deliberated in closed session without the citizen member, and allowed their adjudication specialist to remain with them during their deliberations. The Committee found that Doe's treatment of Patient A was negligent, that Doe failed to maintain proper patient records for Patient A as well as five other patients ("Patients B, D, E, F, and G"), and imposed various sanctions upon Doe.

Doe asked the Committee to reconsider its decision by letter on June 16, 2005. Doe argued that the Committee's decision to deliberate without the citizen member was improper and that the Committee should have postponed its deliberation until that member could participate. In the letter, Doe also objected to the adjudication specialist's presence during the Committee's deliberation. Doe indicated that he wished his letter to serve as his request for formal hearing before the Board, should the Committee deny his request for reconsideration. The Committee declined to reconsider its decision, in part due to Doe's exercise of his absolute right to reject the Committee's decision and request a formal *de novo* hearing before the Board, pursuant to Code § 54.1-2400(10).

---

[3] The letter alleged that Doe had negligently treated patients in violation of Code § 54.1-2706(5), (9), and (10), and 18 VAC 60-21-170(2). It alleged that Doe had kept insufficient dental records in violation of Code § 54.1-2706(9), and 18 VAC 60-20-15(3), (7), and (8).

Doe also filed a motion with the Board prior to his formal hearing, requesting that the Board disqualify all non-dentist Board members from hearing Doe's case. The Board's presiding officer denied Doe's motion.

The Board conducted a formal hearing on December 8 and 9, 2005, regarding Doe's alleged violations. Two Board members hearing Doe's case were not dentists, but dental hygienists. The Commonwealth presented the records of Doe's patients obtained during the investigation.[4]

At the conclusion of the formal hearing, the panel found that Doe had kept inadequate patient records in violation of 18 VAC 60-20-15(3) and (8).[5] The presiding officer read aloud the sanctions the panel had decided to impose. According to the transcript of the hearing, the panel's sanctions included a $2,000 fine, eleven hours of continuing education, including seven hours of education in recordkeeping and risk management, and unannounced audits of patient records by the Board for an eighteen-month period.[6] The transcript reflects the panel's approval of these sanctions by unanimous vote. The Board's minutes of the December 8 hearing indicate that the panel voted to sanction Doe with a reprimand as well as the other sanctions.

The Board issued a written order dated December 15, 2005. The order contained a written reprimand in addition to the sanctions reflected in the transcript of the hearing, and the following findings of fact:

> a. [Doe]'s records for Patients A, B, D, E, F, and G contain an
> inadequate description of the diagnosis and treatment rendered, in
> that the diagnosis lacks an adequate medical history and consists of

---

[4] At his formal hearing, Doe explained his system of recording the condition of each patient's tooth prior to treatment. His records indicate the teeth missing from each patient prior to the patient's treatment.

[5] The panel dismissed the allegation of negligent patient care.

[6] Patient A's civil malpractice action was still pending at the time the Board issued this order.

gross generalizations lacking the detail needed to describe the
actual condition of each tooth and its supporting structure, and the
course of treatment (including treatment options). The services
rendered also lack specificity as to the disposition of each tooth
and supporting structure.

b. Duplicate laboratory work orders submitted with [Doe]'s
records fail to meet certain requisite requirements, in that: (i) The
duplicate laboratory order written for Patient F does not include
[Doe]'s signature, the address of the company doing the work, and
a description of the type and quality of material to be used.
(ii) The duplicate laboratory order written for Patient G does not
include a description of the type and quality of material to be used.

Doe filed a petition for appeal in the Circuit Court for the City of Williamsburg and

County of James City ("the circuit court") on February 16, 2006, asserting numerous

assignments of error. On October 17, 2006, the circuit court entered an order affirming the

decision of the Board. The circuit court concluded that Doe had "received a fair hearing, that the

reprimand was lawful, that the fine (monetary penalty) and findings were proper and the

remedies imposed were within the jurisdiction and authority of the [Board]." Doe now appeals

to this Court.

ANALYSIS

I.  Standard of Review

The Virginia Administrative Process Act ("VAPA") governs dental disciplinary hearings

before the Board. See generally Code § 2.2-4001; Goad v. Virginia Bd. of Med., 40 Va. App.

621, 633, 580 S.E.2d 494, 500 (2003). Doe, the complaining party, bears the burden of proving

the Board committed an error of law. Code § 2.2-4027.

In reviewing proceedings governed by VAPA, "[t]he sole determination as to factual

issues is whether substantial evidence exists in the agency record to support the agency's

decision. The reviewing court may reject the agency's findings of fact only if, considering the

record as a whole, a reasonable mind would necessarily come to a different conclusion."

- 6 -

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). "[I]n the context of factual issues, the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Id.

Likewise, "[t]he construction which an administrative agency gives to its regulation, if reasonable, is entitled to great deference." Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 160, 384 S.E.2d 622, 627 (1989). "[T]rial courts may reverse the administrative agency's interpretation only if the agency's construction of its regulation is arbitrary or capricious or fails to fulfill the agency's purpose as defined by its basic law." Id. at 161, 384 S.E.2d at 627. "[W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Johnston-Willis, Ltd., 6 Va. App. at 244, 369 S.E.2d at 8. "'The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to the matters coming within its cognizance[.]'" Virginia Alcoholic Beverage Control Com. v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (quoting Schmidt v. Board of Adjustment of City of Newark, 88 A.2d 607, 615-16 (N.J. 1952)) (first alteration in original).

## II. The Monetary Penalty

Doe first argues that the Board violated Code § 54.1-2708 by imposing a monetary penalty on him due to Patient A's ongoing malpractice action.

Because Doe did not raise this argument until his appeal to the circuit court, this question presented was not preserved for appeal, and is thus procedurally defaulted. Pence Holdings, Inc. v. Auto Center, Inc., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995) ("We hold that an appellant, under the provisions of the APA, may not raise issues on appeal from an

- 7 -

administrative agency to the circuit court that it did not submit to the agency for the agency's consideration.").

## III.  The Reprimand and Other Sanctions

Doe next argues that the Board violated Code § 54.1-105 by including a reprimand in its order.  This statute requires that "[a]n affirmative vote of a majority of those serving on a . . . health regulatory board . . . shall be required for any action . . . to impose a sanction on a licensee."  Because the transcript of the hearing does not reflect a vote took place to approve the reprimand, Doe reasons that the panel did not vote to impose a reprimand and, thus, did not follow the procedures set forth in the statute.  Again, because Doe failed to raise this argument until his appeal to the circuit court, this question presented was not preserved for appeal, and is thus procedurally defaulted.  Pence Holdings, Inc., 19 Va. App. at 707, 454 S.E.2d at 734.[7]

## IV.  The Proceedings Before the Committee

Doe's next arguments concern the proceedings during his informal hearing before the Committee.  He argues that the Committee erred in failing to postpone deliberations to allow the citizen member to participate, and by conducting its deliberations in the presence of the adjudication specialist assigned to prosecute Doe.  We decline to address these issues, as they are now moot.  Code § 54.1-2400(10) provides, in pertinent part, that

> [t]he order of the [Committee] shall become final 30 days after service of the order unless a written request to the board for a [formal] hearing is received within such time. . . . Upon receiving a timely written request for a hearing, the board or a panel of the board shall then proceed with a hearing as provided in § 2.2-4020, and the action of the [C]ommittee shall be vacated.

---

[7] The transcript of the hearing before the Board did not become available for Doe's review until after the hearing, and thus Doe could not raise this issue at that time.  However, nothing in the record indicates that Doe filed a motion for reconsideration with the Board.  Instead, Doe asked the Board to stay its decision pending Doe's appeal to the circuit court, but did not specifically raise this argument in the request for stay, either.

The effect of this provision is to create the right to a *de novo,* formal hearing before the Board. "[I]t is well settled that an appeal *de novo* from a general district court to a circuit court annuls the former judgment as completely as if no trial had ever occurred." McClellan v. Commonwealth, 39 Va. App. 759, 770, 576 S.E.2d 785, 790 (2003). The same principle applies here. When Doe rejected the findings of the Committee and asked for a formal hearing before the Board, he annulled the findings of the Committee as if the informal hearing had never taken place. Any errors of law made during the informal hearing before the Committee thus became moot.

Doe relies on Horner v. Department of Mental Health, 268 Va. 187, 597 S.E.2d 202 (2004), and argues that Doe's right to a *de novo* formal hearing does not mitigate the Committee's errors. In that case, the Supreme Court of Virginia reviewed a grievance procedure for employees of a state mental hospital. Code § 2.2-3003(D), the governing statute, required that: "'[e]ach level of management review shall have the authority to provide the employee with a remedy.'" Id. at 192, 597 S.E.2d at 204.[8] An employee filed a grievance contesting his termination, and his immediate supervisor, the "first-step respondent," determined that he supported "the complete reversal" of the disciplinary actions and supported the employee's "reinstatement with back pay[.]" Id. at 190, 597 S.E.2d at 203. The employee then concluded his grievance. Id.

However, management proceeded to the "second-step respondent" and "third-step respondent," who both disagreed with the supervisor, and ruled that the employee should not receive any relief. Id. The Supreme Court of Virginia held that the General Assembly, in using the word "remedy," had clearly intended to provide the employee with a remedy by the

_____

[8] Code § 2.2-3003(D) was later amended to read: "Each level of management review shall have the authority to provide the employee with a remedy, *subject to the agency head's approval*."

- 9 -

first-level respondent, and once the employee accepted the remedy, the statute precluded management from contesting the first-level decision. Id. at 192, 597 S.E.2d at 205. To hold otherwise, the court stated, "would reduce the first-level respondent's decision to a mere recommendation that could either be followed or be ignored. That idea effectively renders the disputed language meaningless." Id.

The Committee listed Doe's right to request a *de novo* hearing before the Board as a factor in denying Doe's request for reconsideration. Citing Horner, Doe argues that the Committee treated his informal hearing, a right specifically provided to him by Code § 2.2-4019, as a "procedural throw away," and thus unlawfully viewed its decision as one that could either be followed or ignored.

Horner is inapposite to this case. Crucial to Horner's holding was the construction of Code § 2.2-3003(D), the statute governing grievance procedures for state employees. A different statute with different language governs informal hearings before Virginia administrative agencies. Moreover, no evidence in the record indicates that the Committee viewed the informal hearing as a "procedural throw away." Doe's argument to the contrary, based only on the fact that the Committee cited Doe's right to a *de novo* hearing in denying his motion to reconsider, is nothing more than speculation.

Doe's request for a formal hearing before the Board vacated the Committee's order, and rendered moot any errors that may have occurred during the informal hearing before the Committee. Accordingly, we do not address the merits of Doe's arguments regarding this hearing.

V. Due Process and Void for Vagueness

Doe characterizes his next argument as one claiming that the Board's application of its regulation was "overbroad, arbitrary and capricious, and constituted unlawful rulemaking."

Nevertheless, his argument is essentially twofold. Doe argues that (1) the Board denied him fair notice of the allegations against him, thereby depriving him of procedural due process, and (2) 18 VAC 60-20-15, as applied to Doe, is void for vagueness. Once again, Doe failed to raise this argument until his appeal to the circuit court, and therefore this question presented was not preserved for appeal, and is thus procedurally defaulted. Pence Holdings, Inc., 19 Va. App. at 707, 454 S.E.2d at 734.[9]

## VI. Sufficiency of the Evidence

Doe's final argument on appeal is that the evidence was insufficient to prove that Doe was noncompliant with 18 VAC 60-20-15(3) and (8). Specifically, Doe emphasizes that the panel presiding over Doe's formal hearing included non-dentists. Thus, without expert testimony concerning the proper standard of care in dental recordkeeping, the evidence was insufficient to prove that Doe's recordkeeping was insufficient, in violation of 18 VAC 60-20-15(3). Doe also argues that 18 VAC 60-20-15(8) does not apply to the records of Patients F and G.

As stated above, "[t]he reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Johnston-Willis, Ltd., 6 Va. App. at 242, 369 S.E.2d at 7.

### A. 18 VAC 60-20-15(3)

18 VAC 60-20-15(3) requires dentists to "maintain patient records . . . for purposes of review by the board to include . . . [d]iagnosis and treatment rendered[.]" Doe argues that dental hygienists, who participated in the Board's decision, "would not necessarily be familiar with the standard of care for dental record keeping." As such, Doe argues that such a "lay jury" could not

_____

[9] Again, Doe was unable to make this objection orally at the hearing before the Board, as the Board had not yet issued its written order. Nevertheless, Doe did not file a motion to reconsider or in any other way make his objection known to the Board after receiving the order.

make a finding of a departure from the standard of care for recordkeeping without an expert opinion to that effect.[10] Doe cites <u>Raines v. Lutz</u>, 231 Va. 110, 341 S.E.2d 194 (1986), to support this proposition. In that case, the Supreme Court of Virginia held that "expert testimony is ordinarily required in malpractice cases" on the standard of care required of a dentist. <u>Id.</u> at 115, 341 S.E.2d at 197. However, nowhere in that opinion did the Supreme Court hold that expert testimony is required in disciplinary proceedings before a regulatory board. "[I]n the context of factual issues, the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." <u>Johnston-Willis, Ltd.</u>, 6 Va. App. at 242, 369 S.E.2d at 7.

Code § 54.1-2702 requires that "[t]he professional members of the Board shall be licensed practitioners of dentistry or dental hygiene, [and] of acknowledged ability in the profession[.]" Moreover, all Board members, including dental hygienists, are authorized to promulgate regulations governing both dentists and dental employees. Code § 54.1-2400(6). Thus, these statutes contemplate that *all* Board members are competent to participate in Board matters, including formal hearings, regardless of whether that Board member is a dentist or dental hygienist.

Doe also argues that the evidence was insufficient to prove a violation of 18 VAC 60-20-15(3) because he "explained each part of his records and identified those portions which recorded the diagnosis and the treatment rendered." This argument actually supports the contrary position. The fact that Doe felt it necessary to explain his records before the Board strengthens the Board's finding that "[Doe]'s records . . . contain an inadequate description of the

---

[10] This is a curious position for Doe to take, because Doe argues above that he was prejudiced by the Committee's decision not to postpone its deliberations to allow its *citizen member*, a non-dentist, to participate in the Committee's deliberations.

diagnosis and treatment rendered, in that the diagnosis lacks an adequate medical history and consists of gross generalizations lacking the detail needed to describe the . . . course of treatment (including treatment options)."

Most important in determining the sufficiency of the evidence, however, are Doe's records themselves. In the case of Patients D, F, and G, Doe did not record a diagnosis *at all*. Because Doe did not record *any* diagnosis for these patients, the evidence was sufficient to prove that Doe violated 18 VAC 60-20-15(3).

### B. 18 VAC 60-20-15(8)

Doe also argues that the requirements of 18 VAC 60-20-15(8) do not apply to the records of Patients F and G because he does not employ an outside contractor to "construct or repair" dentures for his patients.

This argument was not presented to the Board, and is thus not preserved for appeal. Pence Holdings, Inc., 19 Va. App. at 707, 454 S.E.2d at 734.

### CONCLUSION

For the reasons stated herein, we hold that the record contains sufficient evidence for the Board to find Doe in violation of 18 VAC 60-20-15(3). We do not address Doe's question presented regarding the informal hearing before the Committee, as it is moot. We decline to address Doe's remaining questions presented, as they are procedurally defaulted.

Affirmed.